# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JARED E.[1]**, | Case No. 6:19-cv-829-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **ANDREW M. SAUL,** Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Katie J. Taylor, HARDER, WELLS, BARON & MANNING, P.C., 474 Willamette Street, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Frederick Fripps, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Jared E. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of

the Social Security Administration ("Commissioner") denying his application for Supplemental

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). For the following reasons, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground on which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff was born on December 23, 1990. AR 60. Plaintiff protectively applied for SSI on September 24, 2015, alleging that his disability began on December 23, 1999 (when he was nine years old), but also asserting that he was not under a disability before age 22. AR 85, 151. Plaintiff earned a modified high school diploma and received special education services. AR 39. Plaintiff has no past relevant work experience. AR 27.

Plaintiff has a history of mental health issues but is reluctant to consult doctors or therapists because Plaintiff believes they will "stick labels" on him or erroneously diagnose him. AR 42. Nonetheless, as a part of Plaintiff's application for social security benefits, he consulted Gregory A. Cole Ph. D, ("Dr. Cole") and Scott Alvord, PsyD, ("Dr. Alvord"). AR 348-64. In addition, two State non-evaluating and non-treating doctors, Joshua Boyd, PsyD, and Irmgard Friedburg, Ph.D, performed a file review and provided their opinions to Disability Determination Services. AR 61-71, 73-84.

The Commissioner denied Plaintiff's claim initially and upon reconsideration. AR 87-97. Plaintiff requested a hearing before an administrative law judge ("ALJ"). AR 102-04. Plaintiff appeared before ALJ John Sullivan on January 22, 2018. AR 33-59. On April 18, 2018, the ALJ issued a decision, finding that Plaintiff was not disabled. AR 15-32. The Appeals Council denied Plaintiff's request for review of the ALJ's decision in April 2019, making the ALJ's decision the final decision of the Commissioner. AR 1-6; *see also* 20 C.F.R. § 422.210(a). Plaintiff seeks judicial review of that decision. This Court has jurisdiction under 42 U.S.C. § 405(g).

### B. The Sequential Analysis

A claimant is disabled if he or she cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can

be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks these series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous
    period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
    claimant does not have a severe impairment, the analysis ends. 20 C.F.R.
    §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe
    impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the
    impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,
    then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),
    416.920(a)(4)(iii). If the impairment does not meet or equal one or more of
    the listed impairments, the analysis continues. At that point, the ALJ must
    evaluate medical and other relevant evidence to assess and determine the
    claimant's "residual functional capacity" ("RFC"). This is an assessment
    of work-related activities that the claimant may still perform on a regular
    and continuing basis, despite any limitations imposed by his or her
    impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e),

416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis
proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC
      assessment? If so, then the claimant is not disabled. 20 C.F.R.
      §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform
      his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience,
      is the claimant able to make an adjustment to other work that exists in
      significant numbers in the national economy? If so, then the claimant is
      not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v),
      404.1560(c), 416.960(c). If the claimant cannot perform such work, he or
      she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also*

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The

Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the

Commissioner must show that the claimant can perform other work that exists in significant

numbers in the national economy, "taking into consideration the claimant's residual functional

capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however,

the Commissioner proves that the claimant can perform other work existing in significant

numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54;

*Tackett*, 180 F.3d at 1099.

**C.  The ALJ's Decision**

The ALJ completed the sequential analysis. At step one, the ALJ found that Plaintiff has

not engaged in substantial gainful activity since the application date, September 24, 2015.

AR 20. At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder, anxiety disorder, and attention deficit hyperactivity disorder ("ADHD"). *Id.* At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the specific impairments listed in the regulations. AR 21.

Next, the ALJ determined Plaintiff's RFC and found that he could perform a full range of work at all exertional levels subject to certain non-exertional limitations. AR 23. Plaintiff's limitations include performing "simple, routine, and repetitive tasks requiring a reasoning level of two or less. [He] is limited to simple work-related decisions. [He] can have occasional contact with [his] supervisor, coworkers, and the public." *Id.*

At step four, the ALJ found no past relevant work. AR 27. At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff could perform. *Id.* The ALJ found that Plaintiff could perform the requirements of representative occupations, including a commercial or institutional cleaner, laundry laborer, and industrial sweeper/cleaner. AR 28. The ALJ thus found that Plaintiff was not disabled under § 1614(a)(3)(A) of the Act. AR 28.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) failing to identify specific, clear, and convincing reasons supported by substantial evidence in the record to reject Plaintiff's subjective symptom testimony; (B) improperly discrediting Dr. Alvord's medical opinion; and (C) affording little weight to the lay witness testimony from Plaintiff's mother. Each argument is addressed in turn.

**A.  Plaintiff's Subjective Symptom Testimony**

In Plaintiff's function report, he claimed back pain, lack of energy, mood swings, anti-social tendencies, ADHD, lack of concentration, and bipolar disorder limit his ability to work. AR 194. Plaintiff stated that he needs reminders to bathe because he "[doesn't] mind being dirty." AR 196. Plaintiff conveyed that he needs encouragement and reminders to get his chores done otherwise he "lets it pile up and pile up." AR 197. Plaintiff does not have a driver's license and cannot drive himself to errands or appointments. *Id*. Plaintiff attested that he goes "nowhere" on a regular basis, does not "like meeting new people," does not "normally get along with others," "people make [him] nervous," and does not "like crowds of four or more" people. AR 198-99. In responding to a question about authority figures, Plaintiff retorted that "anyone that is referred to as a boss can kiss my ---." AR 199. Plaintiff also indicated that "he leaves stressful situations" and does not handle changes in routine well. AR 200.

At the administrative hearing, Plaintiff testified that he lives with his mother. AR 38. Plaintiff briefly discussed his limited work history as a dishwasher and explained that he did not get along with his boss and they often argued. AR 40. Plaintiff also testified that he worked as a telemarketer but that he could not handle the calls because "people can be very, very mean on the phone." AR 41. Plaintiff stated that he always has had issues talking to people or looking people in the eye. AR 41. He similarly admitted that he "always had a hard time talking to people and when [he] talks to people, [he] doesn't talk to them directly." *Id*.

Plaintiff testified that he does not go out by himself and "disassociates [himself] with mostly everyone." AR 45. Relatedly, Plaintiff stated that he only goes to the store with his mother or brother and "most of the time [he goes] back to the car" before they are finished shopping. AR 45. Plaintiff testified that his mother "had to ride [him] pretty hard" to get him to do his chores, and she constantly reminded him to get tasks completed. AR 43. Plaintiff also

admitted that he does not shower on his own without a reminder because he "doesn't really care to," mostly because if he "stay[s] dirty, people won't try to be around [him]." AR 46.

Plaintiff testified that he was not receiving any ongoing medical care. He is concerned that doctors will "try to give [him] a diagnosis on something that may or may not be there" and that counselors will "try to stick labels on [him]." AR 42. He agreed that he "probably" has "some paranoia" around the idea of seeing doctors and therapists. AR 41-42. Plaintiff also confirmed that he was not taking any medications. AR 41.

### 1. Applicable Standards

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." SSR 16-3p, 2017 WL 5180304, at *6 (Oct. 25 2017).[2] There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

---

[2] Effective March 28, 2016, Social Security Ruling (SSR) 96-7p was superseded by SSR 16-3p, which eliminates the term "credibility" from the agency's sub-regulatory policy. SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 Fed. Reg. 14166 (Mar. 16, 2016). Because case law references the term "credibility," it may be used in this Opinion and Order.

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

Considering subjective symptom testimony "is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. SSR 16-3p, *available at* 2016 WL 1119029, at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner further recommends assessing: (1) the claimant's statements made to the Commissioner, medical providers, and others about the claimant's location, frequency, and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and

limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id*. at *6-7.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

### 2.  Analysis

The ALJ found that Plaintiff's medically determinable impairments reasonably could be expected to cause some of Plaintiff's alleged symptoms, but not to the extent that Plaintiff claimed. AR 24. Thus, the second step of the analysis required the ALJ to offer clear and convincing reasons to reject Plaintiff's testimony about the severity of his symptoms. The ALJ gave Plaintiff's symptom testimony less weight because: (a) his course of treatment and medication use do not support his alleged limitations; (b) his activities of daily living are inconsistent with his alleged limitations; and (c) his claimed limitations were unsupported by the medical record. AR 24-27.

### a.  Conservative Treatment and Medication Use

The ALJ found Plaintiff's conservative course of treatment and discontinued use of medication for mood swings undermined his subjective symptom testimony. AR 25-27. The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). Routine, conservative treatment can be enough to discount a claimant's subjective testimony about the limitations caused by an impairment. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Not seeking an "aggressive treatment program"

permits the inference that symptoms were not "as all-disabling" as the claimant

reported. *Tommasetti*, 533 F.3d at 1039. If, however, the claimant has a good reason for not

seeking more aggressive treatment, conservative treatment is not a proper basis for rejecting the

claimant's subjective symptoms. *Carmickle,* 533 F.3d at 1162.

      The ALJ concluded Plaintiff's "reticence in not seeking doctors or therapists translates as

an unwillingness to pursue medical treatment and therapy. It also suggests a disinterest in finding

solutions and most significantly, suggests that [Plaintiff's] conditions are not debilitating."

AR 25. During the relevant period, Plaintiff underwent two psychological examinations with

Dr. Cole and Dr. Alvord. AR 25. Dr. Alvord recommended Plaintiff undergo psychiatric care but

cautioned that "it is improbable that [Plaintiff] will follow through/maintain compliance with

directives." AR 360. Plaintiff also testified at the administrative hearing regarding his concerns

with seeing doctors and therapists. AR 41-42.

      The Ninth Circuit has "particularly criticized the use of a lack of treatment to reject

mental complaints both because mental illness is notoriously underreported and because 'it is a

questionable practice to chastise one with a mental impairment for the exercise of poor judgment

in seeking rehabilitation.'" *Regennitter v. Commissioner of Social Sec. Admin*., 166 F.3d 1294,

1299-300 (9th Cir. 1999) (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996)). A

court should look to the Plaintiff's underlying mental impairments and explanation for failure to

seek treatment. Plaintiff offered an explanation—that he has some concern about doctors

diagnosing issues that may or may not be there and therapists placing labels on him. This

explanation does not sufficiently explain Plaintiff's failure to seek treatment that could

potentially resolve or improve his allegedly totally debilitating mental impairments. Moreover,

Plaintiff has not been diagnosed with severe mental conditions such as schizophrenia or a

condition that significantly precludes him from seeking treatment. Additionally, at the hearing, Plaintiff responded to the ALJ's hypothetical asking Plaintiff what he would do if the ALJ recommended that Plaintiff receive counseling by stating: "I would do what I had to do." AR 44. This shows that Plaintiff was willing to see a counselor to obtain social security benefits, which serves to discredit the claim that he is unable to attend appointments because of his mental impairments. Accordingly, the Court finds that the ALJ did not err in finding that Plaintiff's failure to seek mental health treatment was a clear and convincing reason to discount his subjective testimony about his alleged impairments from his mental health condition.

Regarding the possible use of medication for Plaintiff's mood swings, the ALJ noted that Plaintiff did not presently take any medication but that Plaintiff previously took Seroquel and stopped taking that about eight years ago. The ALJ concluded "the claimant's non-compliance with medication undermines the claimant's allegations of experiencing persistently debilitating symptoms." AR 25.

The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (quoting *Tomasetti*, 533 F.3d at 1039) (quotation marks omitted). The only evidence the ALJ cited for Plaintiff's medication use is Plaintiff's self-report that he "believes he has taken Seroquel in the past for mood swings but 'nothing since 8 years ago.'" AR 357. This is not substantial evidence in the record that Plaintiff was prescribed Seroquel but failed to follow prescribed treatment. There is no evidence that a doctor continued to prescribe Seroquel or advised Plaintiff to continue to take Seroquel. Indeed, the record notes that Plaintiff was "weaned" off the drug, indicating it was monitored and controlled by a health practitioner and may have been directed

PAGE 12 – OPINION AND ORDER

by a doctor's orders. *See, e.g.*, AR 335. The record also shows that Seroquel "didn't help" Plaintiff's symptoms. *See, e.g.*, AR 349. Thus, the fact that Plaintiff stopped using Seroquel is not a clear and convincing reason to discount his testimony.

### b. Daily Living Activities

The ALJ also determined that Plaintiff's testimony about his activity level was inconsistent with his alleged limitations. AR 26-27. The ALJ stated that "the claimant's activities of daily living include his ability to lift and carry heavy objects, his ability to vacuum, complete laundry, prepare meals daily, ride public transportation, his ability to go shopping, take short walks, drive a tractor, manage his money and maintain a bank account, [do] not support a greater restriction [than] those the State medical consultants assessed." AR 27.

Daily living activities may provide a basis for discounting subjective symptoms if the plaintiff's activities contradict his or her testimony. *See Molina*, 674 F.3d at 1112-13; *Orn*, 495 F.3d at 639. For daily activities to discount subjective symptom testimony, the activities need not be equivalent to full-time work; it is sufficient that the plaintiff's activities "contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113. A plaintiff, however, need not be utterly incapacitated to receive disability benefits, and completing certain routine activities cannot discount subjective symptom testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." (quoting *Fair v. Bowen*, 885 F.2d at 603)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled."); *Reddick*, 157 F.3d at 722 (requiring the level of activity be inconsistent with the plaintiff's claimed limitations to be relevant to his or her credibility and

noting that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Plaintiff's activity level contradicts his alleged physical impairments that he lacked the energy to get out of bed and had back problems. For example, that Plaintiff can lift and carry heavy objects, vacuum, complete laundry, take short walks, and drive a tractor suggest a greater physical ability than Plaintiff states.

Regarding Plaintiff's alleged mental impairments, the Ninth Circuit upheld an ALJ's finding that a claimant's "ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child" contradicted claims of disability caused by major depressive disorder and a personality disorder. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Such activities indicate that a claimant's mental impairments are not as disabling as claimed. Similarly, the ALJ's finding that Plaintiff's "ability to lift and carry heavy objects, his ability to vacuum, complete laundry, prepare meals daily, ride public transportation, his ability to go shopping, take short walks, drive a tractor, [and] manage his money and maintain a bank account" contradict his claim of a totally disabling mental impairment is a rational interpretation of the record. AR 27. Although Plaintiff's activities of daily living may be subject to an interpretation more favorable to Plaintiff, the ALJ's interpretation is rational. A court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Magallanes*, 881 F.2d at 750. Thus, Plaintiff's activities of daily living are a specific, clear, and convincing reason to discount Plaintiff's subjective symptom testimony.

### c.  Objective Medical Evidence

The ALJ found that "the medical evidence of record contains no medical documentation for the extreme symptoms [Plaintiff] alleges." AR 24. The ALJ focused on Plaintiff's testimony that "he is unable to work because he does not have any energy to get out of bed and he has

problems with his back," "his ADHD made it difficult to concentrate on any one particular task,"

"he is easily annoyed because of anti-social tendencies" that make it difficult to interact with co-

workers and bosses, and "his mood swings caused difficulties and were 'very ignitable.'" AR 24.

An ALJ may consider the lack of corroborating objective medical evidence as one factor

in "determining the severity of the claimant's pain." *Rollins*, 261 F.3d at 857. The ALJ may not,

however, reject subjective pain testimony solely because it was not fully corroborated by

objective medical evidence. *Robbins*, 466 F.3d at 883; *see also* 20 C.F.R. § 404.1529(c)(2)

(noting that the Commissioner "will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have on your

ability to work solely because the available objective medical evidence does not substantiate

your statements").

### i.  Physical Impairments

The ALJ first focused on Plaintiff's alleged physical impairments. The ALJ did not reject

Plaintiff's statements solely because they were not fully corroborated by the medical evidence.

Instead, the ALJ noted that "the medical evidence of record contains no medical documentation

for the extreme symptoms [Plaintiff] alleges." AR 24. The Court agrees. For example, the ALJ

noted "other than the claimant's subjective report that he has no energy," nothing in the medical

record supports Plaintiff's "allegation that lack of energy is a symptom of an impairment."

AR 24. The ALJ also explained that "there is no medical evidence consisting of signs,

symptoms, and laboratory findings or imaging in the medical evidence of record to support his

subjective allegation of back pain." AR 25. Indeed, the State agency medical consultants'

physical assessments did not find any severe physical impairments. AR 70-71, 82-83.

Plaintiff does not cite any evidence in the record that supports Plaintiff's alleged physical

impairments. A lack of medical evidence is a factor that the ALJ can consider in evaluating a

claimant's subjective symptom testimony. *Burch*, 400 F.3d at 681. Thus, discounting Plaintiff's subjective symptom testimony about his physical impairments based on a lack of supporting evidence in the medical record, along with Plaintiff's daily living activities, were valid reasons for discounting Plaintiff's alleged physical limitations.

### ii.  Mental Impairments

The ALJ found limited support for Plaintiff's ADHD, social anxiety, and mood swings. AR 25. First, the ALJ noted that Dr. Alvord observed symptoms of ADHD, including impulsivity, lack of social sense, and inattention but noted "there is no pattern of subjective complaints in the medical record to underscore the intensity, persistency, and pace the claimant alleges." AR 25, 360.

Plaintiff argues that the lack of medical evidence forming a pattern of subjective complaints in the medical record is directly attributed to Plaintiff's mental health impairments. For the same reasons that the Court rejected Plaintiff's arguments regarding why Plaintiff's failure to seek treatment was not a clear and convincing reason to discount Plaintiff's subjective symptom testimony, the Court rejects Plaintiff's argument here. The ALJ's consideration of the lack of support in the medical record for Plaintiff's subjective complaints is a factor the ALJ properly could consider, along with the other factors considered above, in discounting Plaintiff's subjective testimony.

## B.  Dr. Alvord's Opinion

### 1.  Applicable Standards

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison*

*v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a non-examining, non-treating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, inconsistency with a claimant's daily activities, or that the opinion is brief, conclusory, and inadequately supported by clinical findings. *Bray*, 554 F.3d at 1228; *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43.

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). In other words, "[t]he ALJ must do more than offer his conclusions.

He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725 (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). "[T]he opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." *Morgan*, 169 F.3d at 602 (citations omitted); *but see id*. at 600 (opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record).

## 2. Analysis

Dr. Alvord performed a neuropsychological evaluation of Plaintiff in December 2017 to clarify diagnosis, inform treatment, and evaluate functioning. AR 356. In creating his report, Dr. Alvord reviewed Plaintiff's academic and medical records, administered a clinical interview, mental status examination, Wechsler Adult Intelligence Scale— Fourth Edition ("WAS-IV"), and Wechsler Memory Scale—Fourth Edition ("WMS-IV"). AR 356. Dr. Alvord noted that Plaintiff was "difficult to evaluate primarily due to his hygiene," and as a result, Dr. Alvord had to excuse himself from the examination room on one occasion for fresh air. AR 356.

Dr. Alvord diagnosed Plaintiff with schizoid personality disorder. AR 360. He noted "evidence of an Anxiety Disorder not otherwise specified" and evidence of ADHD. *Id.* He suggested that Bipolar II should be ruled out. He concluded that Plaintiff's intelligence quotient ("IQ") is in the borderline range. *Id.* In a bullet point, but not in his notes, he suggested that a psychotic disorder, not otherwise specified, also should be ruled out. *Id.*

During Dr. Alvord's assessment, Plaintiff could not calculate five times nine or spell the word "world." AR 359. Plaintiff's full IQ score was 79, showing borderline intellectual functioning. AR 359-60. Dr. Alvord assessed marked impairment in Plaintiff's ability to understand, remember, or carry out complex instructions, make judgments on complex work-

related decisions, interact appropriately with the public, supervisors, and coworkers, and respond appropriately to a usual work situation and changes in a routine work setting. AR 363. In addition, Dr. Alvord found moderate impairment in Plaintiff's ability to make judgments about simple work-related decisions. AR 363. Dr. Alvord commented that Plaintiff's "anxiety will impact his consistency." AR 360.

Dr. Alvord predicted that Plaintiff would miss more than four workdays per month because of his mental health issues. AR 364. Dr. Alvord opined that "[g]iven the information at my disposal, it is improbable that [Plaintiff] will function adequately in a work environment that requires any level of socialization. . . . His prognosis is guarded at best. Psychiatric care is indicated although it is improbable that he will follow through/maintain compliance with directives." AR 360.

The ALJ afforded Dr. Alvord's opinion little weight because it heavily relied on Plaintiff's subjective complaints from one examination.[3] AR 26. Plaintiff argues that this is an improper basis to reject a psychologist's conclusions based on a neuropsychological evaluation. Plaintiff cites *Buck v. Berryhill*, 869 F.3d 1040 (9th Cir. 2017).

In *Buck*, the Ninth Circuit reiterated that "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Id.* at 1049 (quoting *Morgan*, 169 F.3d at 602). The Ninth Circuit explained, however, that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding

---

[3] The Commissioner asserts additional bases for discounting Dr. Alvord's opinions, but the Court must disregard *post hoc* explanations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

mental illness." *Id.* This is because "[p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." *Id.* Thus, the Ninth Circuit held that when an examining mental health practitioner only partially relies on a claimant's self-report and also relies on other measures such as a clinical examination and a mental status evaluation, the ALJ errs by discounting the practitioner's opinion as improperly based on a claimant's subjective testimony. *Id.*

Dr. Alvord, similar to the physician in *Buck*, only partially relied on Plaintiff's self-report. Dr. Alvord also relied on his own observations from his clinical interview, his review of Plaintiff's medical records, his mental status evaluation of Plaintiff, and the psychological testing he conducted (administering WAS-IV and WMS-IV). "These are objective measures and cannot be discounted as a 'self-report.'" *Id.* Dr. Alvord also specifically noted in his report that the historical information, which he obtained from Plaintiff's self-reporting, was "included simply to inform diagnostic impressions and chronicle functioning" and that "historical information is potentially lacking in accuracy and far from comprehensive" but that nonetheless, the "evaluation is judged to adequately address the referral question." AR 360-61. Thus, Dr. Alvord recognized that there may inaccuracies in Plaintiff's self-reporting, but Dr. Alvord took that into consideration in making his evaluation and report.

Defendant also argues that the ALJ properly afforded Dr. Alvord's opinion limited weight because he rendered his opinion after examining Plaintiff only once. Agency regulations, however, advise that examining doctors, who do not have a treating relationship with the claimant but render a medical opinion after examining the claimant once, generally are given more weight than a doctor who exclusively relies on reviewing records in forming his or her

medical opinion. *See* 20 C.F.R. § 416.927(c)(1). Thus, the ALJ's discounting of Dr. Alvord's opinion for this reason is inconsistent with agency regulations. Additionally, the ALJ gave great weight to State agency medical consultants who never saw Plaintiff and only reviewed records, or who also saw Plaintiff only once. Thus, discounting Dr. Alvord's opinion because he saw Plaintiff only once is inconsistent with the ALJ's own opinion.

Defendant also cites *Turner v. Comm's of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010), but *Turner* is factually distinguishable. In *Turner*, the Ninth Circuit noted that an examining physician "assumed from the outset, *without offering his own diagnosis*, that [the claimant] suffered from post-traumatic stress disorder." *Id.* at 1223 (emphasis added). The Ninth Circuit stated that because the physician had no previous interaction with the claimant, the physician was "in a poor position to assess the claimant's statements." *Id*. Unlike the examining physician in *Turner*, Dr. Alvord did not accept all of Plaintiff's subjective complaints from the outset. Instead, Dr. Alvord formed his opinion after performing a clinical interview and mental status examination, reviewing available medical records, and administering psychometric testing. Therefore, simply because Dr. Alvord rendered his medical opinion after only one examination is not a legitimate reason to afford Dr. Alvord's opinion limited weight.

### 3. Harmless Error

An error is harmless if it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012); *see also Robbins*, 466 F.3d at 885 (noting that an error is harmless if it is "clear from the record the error was inconsequential to the ultimate non-disability determination"). Defendant argues that even if the ALJ erred by discounting Dr. Alvord's opinion, the error was harmless because Dr. Alvord did not express any opinion about functional limitations or employability. The Court rejects this argument. Dr. Alvord opined that Plaintiff had numerous marked limitations and would miss four workdays

per month; Dr. Alvord also questioned whether Plaintiff could work in an environment with *any* socialization. Missing four workdays per month renders a person unemployable. *See* AR 51 (stating VE's testimony that regularly missing more than one day per month makes a person unlikely to sustain competitive employment). The other limitations opined by Dr. Alvord also likely would have affected Plaintiff's RFC. Thus, the ALJ's discounting Dr. Alvord's opinion was not harmless error.

### C.  Lay Witness Testimony

Plaintiff argues that the ALJ did not give germane reasons for discounting the lay witness testimony of Plaintiff's mother, Kathleen P. ("Kathleen").

#### 1.  Applicable Standards

Any person who gives testimony about a claimant's impairments can qualify as a lay witness. SSR 06-03p, 2006 WL 2329939, at *2. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony about a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject this testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the

ALJ credited." *See id*. at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Id.* at 1122 (quotation omitted). When an ALJ ignores *uncontradicted* lay witness testimony highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

### 2.  Analysis

Plaintiff's mother, Kathleen, completed a written Function Report in November 2015. AR 216. In this report, Kathleen stated that Plaintiff helped her with some household chores and tasks, but he needed reminders. AR 217, 220. Kathleen reported that she often reminded Plaintiff to change his clothes because he sometimes went weeks without a change of clothing, and Plaintiff had not showered in more than two months. AR 217, 220. Kathleen also explained Plaintiff's demeanor, stating that he was easily distracted, negatively responded to criticism, retreated around other people, was anti-social, and did not trust people. AR 218-22. Kathleen added that because of his anxiety Plaintiff needed someone to accompany him in public places. AR 222. Kathleen also explained that Plaintiff's conditions affect his memory, concentration, and ability to complete tasks, and he did not handle stress or changes in routine well. AR 223-24. Finally, Kathleen conveyed that Plaintiff could follow written and spoken instructions but did not get along well with authority figures. AR 223.

Plaintiff argues that the ALJ failed to provide a germane reason for discounting Kathleen's testimony and erred by failing to take her testimony into account in crafting Plaintiff's RFC. The ALJ did not specifically discount Kathleen's testimony. Instead, the ALJ "considered [Kathleen's] statements in [his] determination." AR 24. Although the ALJ

"considered" Kathleen's statements in his final determination, the ALJ did not include in Plaintiff's RFC all the limitations as described by Kathleen. The ALJ did not comment or explain why he disregarded Kathleen's testimony.

Defendant argues that the ALJ was not required to comment on Kathleen's lay witness testimony because her testimony regarding Plaintiff's limitations is similar to Plaintiff's properly discounted subjective symptom testimony. "[A]n ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims." *Molina*, 674 F.3d at 1122. Plaintiff's subjective symptom testimony and Plaintiff's mother's lay witness testimony discuss similar alleged limitations. Earlier in this decision, the Court upheld the ALJ's discounting of Plaintiff's subjective testimony. Thus, the ALJ's error in failing to provide specific germane reasons to discount Kathleen's testimony is harmless. *Id.*

**D.  Remand**

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether

the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

The ALJ erred in discounting Dr. Alvord's opinion without providing a specific, legitimate reason. The record, however, is not fully developed and free from conflicts and ambiguities because there are conflicting medical opinions. There is a useful purpose in further proceedings so that the Commissioner properly may evaluate Dr. Alvord's opinion.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 27th day of April, 2020.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge